Kimmel & Silverman, P.C.
1930 East Marlton Pike, Suite Q29
Cherry Hill, New Jersey 08003
Telephone: 856-429-8334
Attorney of Record: Amy Bennecoff (AB0891)
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA BERRIGAN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) **Case No.:** |
| | ) |
| PRESSLER & PRESSLER, LLP | ) **COMPLAINT AND DEMAND FOR** |
| | ) **JURY TRIAL** |
| Defendant | ) |
| | ) **(Unlawful Debt Collection Practices)** |

## COMPLAINT

CYNTHIA BERRIGAN ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against PRESSLER & PRESSLER, LLP ("Defendant"):

## INTRODUCTION

1.     Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

**JURISDICTION AND VENUE**

2.    Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3.    Defendant conducts business and has an office in the State of New Jersey and therefore, personal jurisdiction is established.

4.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

6.    Plaintiff is a natural person residing in Bayou, New Jersey.

7.    Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8.    Defendant is a national debt collection company with corporate headquarters located at 7 Entin Road in Parsippany, New Jersey, 07054.

9.    Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

PLAINTIFFS' COMPLAINT

10.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**PRELIMINARY STATEMENT**

11.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq.* The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

12.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection

PLAINTIFFS' COMPLAINT

of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.   The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13.    In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692a.  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  15 U.S.C. § 1692b.

14.    Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively

- 4 -

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15.  At all relevant times, Defendant was attempting to collect two (2) alleged consumer debts from Plaintiff.

16.  The alleged debts at issue arose out of transactions, which were primarily for personal, family, or household purposes.

17.  On July 6, 2010 Defendant placed a levy on Plaintiff's Pamrapo checking account in the amount of $5,299.01.

18.  On July 29, 2010 Defendant removed $875.00 plus an added $75.00 levy fee from Plaintiff's Pamrapo checking account.

19.  At the time the Plaintiff had in total $989.70 in her Pamrapo checking account.

20.  On July 30, 2010 upon finding out that her checking account had been levied Plaintiff called Defendant and spoke with its agent "John". Plaintiff explained to "John" that the Pamrapo checking account was a child support and unemployment fund account in which the funds were direct deposited.

21.  Plaintiff informed Defendant that the amount of money they took from her was the money directly deposited from her latest unemployment check

and the balance of her child support.

22.     Plaintiff requested that Defendant remove the levy and return the funds so that she could pay her rent for the upcoming month.

23.     Plaintiff also told "John" that since it was a Friday and the bank would be closed for the weekend Defendant was leaving her with no money and no recourse at all until Monday.

24.     "John" stated that Plaintiff would need to prove that the money in her checking account was from child support payments and unemployment checks. Plaintiff was to provide three (3) months worth of bank statements.

25.     "John" also informed Plaintiff that if there were any other deposits into the account then the Defendant was entitled to take them.

26.     Plaintiff told "John" that her child support and unemployment check total $2,900.00 a month, but that the account can overlap if she waits till the fifteenth of the month to pay the rent instead of on the first, that is why her account could look like it has more deposits in it then it really does.

27.     Plaintiff told "John" that her rent and living expenses far outreached the amount she received from child support and unemployment.

28.     "John" once again stated that Plaintiff would need to prove this.

29.     On July 30, 2010 Plaintiff called up Defendant again to ask for the name of the original creditor and the original amount of the debt, she spoke with

PLAINTIFFS' COMPLAINT

"Brittney".

30.     "Brittney" informed the Plaintiff that she had forfeited all of her rights to any information regarding to the judgment issued against her.

31.     The Plaintiff informed "Brittney" that she was neither confirming nor denying the debt at this time, she merely wanted to know where the debt originated.

32.     "Brittney" again refused to provide the requested information.

33.     On Friday, July 30, 2010, Plaintiff drafted a letter to Defendant and faxed it on Monday, August 2, 2010. True and correct copies of the relevant portions of the July 30, 2010 letter are attached hereto as Exhibit "A".

34.     Plaintiff once again requested Defendant to remove the levy because the bank account in question was for child support and unemployment check deposits only. See Exhibit A.

35.     Plaintiff included copies of her checking account deposits made from the months of April 2010 to June 2010.  The only deposits into Plaintiffs checking account were for child support and unemployment. See Exhibit A.

36.     After Plaintiff faxed Defendant the above letter she called Defendant to ensure her documents had been received.

37.     Plaintiff was informed that she would need to resend her documents.

38.     On August 3, 2010 Plaintiff once again called Defendant to see if her

PLAINTIFFS' COMPLAINT

documents had been reviewed; Defendant informed Plaintiff they had not yet retrieved and/or reviewed her documents.

39.    In response to this, Plaintiff re-faxed the documents to ensure Defendant's receipt of the same.

40.    On August 4, 2010, Plaintiff still without access to her checking account, called Defendant to see if her documents had been reviewed; Defendant informed Plaintiff they still had not yet retrieved and/or reviewed her documents.

41.    In response to this, Plaintiff re-faxed the documents again.

42.    On August 6, 2010 Plaintiff once again called Defendant to check on whether her documents had been reviewed; Defendant informed her that it still had not yet retrieved and/or reviewed her documents.

43.    Plaintiff was frustrated by Defendant's lack of attention to this matter as she was unable to provide food and pay for living expenses for her and her children.

44.    Almost a month went by until the levy was removed and Plaintiff could once again access her unemployment and child support funds.

45.    At no time prior to the levy was Plaintiff ever informed that a judgment had been issued against her and that Defendant would be levying her bank account.

46.    Defendant also made repeated harassing telephone calls to Plaintiff at

PLAINTIFFS' COMPLAINT

her home telephone number in an effort to collect this alleged debt; the most recent telephone call to Plaintiff was made on April 18, 2011.

47.   These contacts are despite knowledge that Plaintiff is represented by counsel and correspondence Plaintiff's counsel sent to Defendant on August 24, 2010 indicating to cease and desist any further contact with Plaintiff.  A true and correct copy of the August 24, 2010 letter is attached hereto as Exhibit "B".

48.   Defendant's actions in attempting to collect the alleged debt were harassing, abusive and highly deceptive.

## CONSTRUCTION OF APPLICABLE LAW

49.   The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages."  Russell v. Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

50.   The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts

interpret it liberally.  Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer."  Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

51.   The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  Id.   The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices.  Clomon, 988 F. 2d at 1318.

PLAINTIFFS' COMPLAINT

1

2

3

4

## COUNT I
## DEFENDANT VIOLATED
## THE FAIR DEBT COLLECTION PRACTICES ACT

5

6

7

52. In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

8

   a. Defendant violated of the FDCPA generally;

9

10

11

12

   b. Defendant violated § 1692c(a) of the FDCPA when it communicated with Plaintiff after it had knowledge that Plaintiff was represented by counsel;

13

14

15

16

   c. Defendant violated § 1692c(c) of the FDCPA when it communicated with Plaintiff after being advised to cease further communication;

17

18

   d. Defendant violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

19

20

21

22

   e. Defendant violated § 1692d(5) of the FDCPA by causing Plaintiff's telephone to ring repeatedly or continuously with the intent to annoy, abuse or harass Plaintiff;

23

24

25

   f. Defendant violated § 1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

- 11 -

g. Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

h. Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

i. Defendant violated § 1692g of the FDCPA by failing to send written notification, within five (5) days after its initial communication with Plaintiff, advising Plaintiff of her rights to dispute the debt or request verification of the debt;

j. Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, CYNTHIA BERRIGAN, respectfully pray for a judgment as follows:

a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b. Statutory damages of $1,000.00 for each violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

PLAINTIFFS' COMPLAINT

1

2

        c.  All reasonable attorneys' fees, witness fees, court costs and other

          litigation costs incurred by Plaintiff pursuant to 15 U.S.C. §

3

          1693k(a)(3); and

4

        d.    Any other relief deemed appropriate by this Honorable Court.

5

6

## DEMAND FOR JURY TRIAL

7

8

     PLEASE TAKE NOTICE that Plaintiff, CYNTHIA BERRIGAN, demands

9

a jury trial in this case.

10

## CERTIFICATION PURSUANT TO L.CIV.R.11.2

11

     I hereby certify pursuant to Local Civil Rule 11.2 that this matter in

12

13

controversy is not subject to any other action pending in any court, arbitration or

14

administrative proceeding.

15

16

                      RESPECTFULLY SUBMITTED,

17

18

DATED: April 22 2010         KIMMEL & SILVERMAN, P.C..

19

20

                      By: /s/ Amy L. Bennecoff

21

                      Amy L. Bennecoff
                      Attorney ID # AB 0891

22

                      Kimmel & Silverman, P.C

23

                      1930 E. Marlton Pike, Suite Q29
                      Cherry Hill, New Jersey 08003

24

                      Phone: (856) 429-8334
                      Facsimile (856) 216-7344

25

                      Email: abennecoff@creditlaw.com

PLAINTIFFS' COMPLAINT